GREAT SOUTHERN LIFE INSURANCE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81328. Promulgated November 4, 1937.

*Wright Matthews, Esq.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

OPINION.

TYSON: This proceeding involves an asserted income tax deficiency of $10,334.83 for the calendar year 1931 and an alleged overpayment of income tax for that year in the amount of $5,494.05.

The petitioner assigns as error (1) the inclusion in its gross income for the taxable year 1931 of the sum of $9,782.30, alleged to represent the amount collected by petitioner during that year on interest purchased during 1930, together with other assets, from the Southern Union Life Insurance Co. and the American Southern Life Insurance Co.; (2) the failure to allow as a deduction for the taxable year 1931, the sum of $39,793.07, alleged to have been disbursed by petitioner in that year as investment expenses through payment in that amount of tax on personalty to the State of Texas; and (3) the inclusion in its gross income for the taxable year 1931 of the sum of $86,123.61, alleged to represent past due and accrued interest on mortgage loans, which together with the principal of the old notes was included in new notes secured by new deeds of trust. Further, petitioner's amended petition alleges that it is entitled to a refund of $5,949.05 for 1931, and that this amount has been paid within two years before the filing of its petition, but such allegations are denied by respondent's amended answer.

The stipulation of facts, together with the attached exhibits, is included herein by reference. The stipulated facts on the third issue have been supplemented by oral testimony adduced at the hearing.

The petitioner, a Texas corporation having its home office at Houston, is a stock company doing business usual to that of a life insurance company, operating on the legal reserve level premium plan. Petitioner keeps its books and records and files its Federal income tax returns, form 1120–L, on the cash receipts and disbursements basis.

Since our determinations of the first and second issues in this proceeding are controlled by our decision in *Great Southern Life Insurance Co.*, 33 B. T. A. 512, wherein, *inter alia*, the same questions were raised by the same taxpayer based on similar facts but for prior years, we need only set forth the ultimate facts and conclusions with respect to these issues. The cited case was affirmed

in 89 Fed. (2d) 54, upon various issues presented on appeal, including one identical with the second issue herein.

Pursuant to reinsurance contracts executed on February 11 and March 12, 1930, and in effect as of January 1, 1930, the petitioner reinsured the business of the American Southern Life Insurance Co. of Lake Charles, Louisiana, and the Southern Union Life Insurance Co. of Fort Worth, Texas, respectively, and acquired certain assets from those companies equal in value to the reserves on the policies reinsured. Pursuant to contemporaneous and supplemental contracts, the petitioner agreed to purchase the balance of the admitted assets of those two companies and pay therefor "the par value thereof with accrued interest to the date that they are respectively taken over." The assets so purchased from the American Southern Life Insurance Co. included accrued interest in the sum of $7,318.53, of which petitioner collected the amounts of $4,665.57 during 1930 and $225.91 during 1931. The assets so purchased from the Southern Union Life Insurance Co. included accrued interest in the sum of $112,804.99, of which petitioner collected the amounts of $85,807.94 during 1930 and $9,556.39 during 1931. The amounts of such interest collected were applied on the petitioner's books to the earliest interest accrued, that is, interest which had accrued prior to the time petitioner acquired the assets. The interest collected during 1931, totaling $9,782.30, was reported as income by petitioner on its income tax return filed for that year. With reference to this issue it is stipulated that, "This interest collected in 1931 was reported as income by the petitioner on its income tax return filed for that year. A claim for refund was filed, but no amount has been refunded by the Commissioner of Internal Revenue on account of the inclusion of this amount in said income tax return."

The total amount of such accrued interest collected during 1930 and 1931 was less than the cost to petitioner of the amounts of accrued and unpaid interest purchased by petitioner from the American Southern Life Insurance Co. and the Southern Union Life Insurance Co., respectively. Accordingly, upon authority of *Great Southern Life Insurance Co., supra,* and cases cited therein on page 530, the total amount of $9,782.30 of said accrued interest collected by petitioner during 1931 represented a return of capital and thus did not constitute taxable income. On this first issue we decide in favor of the petitioner.

During the year 1931 the petitioner paid personal property taxes in the State of ¡Texas, to the County of Harris, in the amount of $39,793.07, as stipulated, which amount is claimed by petitioner as a deduction from gross income, as investment expense. Such taxes were paid pursuant to article 4754 of the Insurance Laws of the State of Texas, Digest of 1932, and were assessed upon the basis of peti-

tioner's capital and surplus, less real estate owned, in the amounts as set forth in the stipulation of facts. Throughout 1931 petitioner owned investments in an amount equal to its reserves, capital, and surplus. Upon authority of *Great Southern Life Insurance Co.*, *supra*, such personal property taxes are not deductible under section 203 (a) (5) of the Revenue Act of 1928 as investment expenses, or under section 203 (a) (6) of the same act, as real estate taxes. On this second issue we approve the respondent's disallowance of the claimed deduction of $39,793.07, personal property taxes.

The third issue involves a question of whether during 1931 the petitioner received interest income in the amount of $86,123.61 on mortgage loans.

During the year 1931 the petitioner had 21 mortgage loans, secured by deeds of trust, on which there was accrued and past due interest in the total amount of $86,123.61. After making demand for the payment of the principal of the loans and the accrued interest thereon and failure to obtain any cash collections on account of such principal and interest, an investigation by petitioner disclosed that none of the 21 mortgagors were able to pay either the accrued interest or principal of the loans and that the property securing each of such loans would not at foreclosure sale bring a sufficient amount to pay the amounts due on such loan.

The petitioner's business policy was that it would not take title to property or force a sacrifice sale of same upon foreclosure so long as the mortgagor was inclined to pay, in which event the petitioner tried to work the matter out by rewriting the loan, especially in cases where the amount due on a loan was greater than the value of the property securing the loan. Pursuant to that policy and because petitioner could not have realized the amount due on any one of these original mortgage loans, by foreclosure, and with the hope of some day in the future making collection thereof, the petitioner renewed those 21 loans during 1931 and received from each of the 21 debtors a new note in a face amount equal to the principal sum due on the old note plus the past due and accrued interest thereon. In each instance the new note was secured by a new deed of trust which was regularly filed for record and which embraced only the identical security that the petitioner had under the old deed of trust. None of the 21 debtors had any additional collateral "or anything" to put up as security for such loans. The renewal notes merely afforded the debtors a different program on which to make payment.

The new notes and deeds of trust so received were placed in petitioner's files together with the old notes and deeds of trust, which were not released or surrendered by petitioner. It was always the practice of petitioner in such cases to retain the old note and deed of trust and to include them with the new note and papers and make

them a part thereof. The petitioner made no effort to discount any of those 21 renewal notes because there was no market for them.

On its books the petitioner carried its mortgage loans at the amount of the notes given by the makers, less any principal payments thereon. During 1931, whenever petitioner renewed a mortgage loan on which there was past due and accrued interest, an entry was made on its books in the following form:

Debit "Mortgage Loans"_____ (Amount of the new note)
Credit "Mortgage Loans"_____ (Amount of Balance of Principal of old note)
Credit "Interest on Mortgage Loans"_____. (Amount of interest due or accrued at the time the loan was renewed)

At the end of the calendar year 1931 the petitioner closed into an account on its books entitled "Profit and Loss" the above mentioned account of "Interest on Mortgage Loans" as well as other accounts designated income and disbursements, as shown in the company's annual statement. Such "Profit and Loss" account does not purport to indicate the petitioner's actual net profit or taxable income.

Under the foregoing facts it is clear that during 1931 the petitioner did not receive in cash any part of the said total amount of $86,123.61 past due and accrued interest on the original 21 mortgage loans. It is equally clear that the receipt of the renewal notes, including such interest in their face amount, did not represent the receipt by petitioner of the equivalent of cash, for the security for such new notes was identical with that for the old notes and was not equal in value to the amounts due on the old notes and there was no market for such renewal notes. Accordingly, the petitioner, being on the cash basis, would not be in receipt of interest income until the renewal notes, or one or more of them, were paid. In our opinion,. the petitioner during 1931 did not receive income in the amount of $86,123.61, or any part thereof, as a result of the note renewal transactions. *Great Southern Life Insurance Co.*, *supra; San Jacinto Life Insurance Co.*, 34 B. T. A. 186, and authorities cited therein. On this third issue we decide in favor of petitioner.

With reference to petitioner's allegations that it is entitled to a refund of $5,949.05 for 1931 and that such amount has been paid within two years before the filing of the petition herein, the only facts of record are those set out in the stipulation as to a claim for refund as hereinbefore quoted with regard to the first issue involving the amount of $9,782.30 accrued interest collected in 1931 and reported as income. From these facts we are unable to make a finding that the petitioner paid a definite amount of income taxes for 1931 within two years before the filing of a claim for refund or the petition herein, whichever was earlier.

*Decision will be entered under Rule 50.*