**MELLINGER et al. v. UNITED STATES.**

No. 42852.

Court of Claims.

Feb. 7, 1938.

966

Robert Ash, of Washington, D. C., for plaintiffs.

J. W. Blalock, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This is an action to recover alleged overpayments of income tax for the years 1926 and 1929. It appears that Mary Ann Sweeney, now deceased, hereinafter referred to as the taxpayer, whose testamentary trustees are among the plaintiffs in this action, in 1926 held notes of two parties named Loftus and Blakely upon which the interest was past due. Repeated demands on the respective parties having been made for the payment of the interest without any results being obtained, the taxpayer accepted from each of them separate new notes which included the interest which was past due on his respective obligations. The taxpayer having acquired sole title to these notes on the death of her husband reported the interest thereon which had accrued since his death in 1925 as part of her income for the year 1926, although no cash payment was received, and paid the tax thereon accordingly.

In 1928 the taxpayer held certain notes executed by one Bergman and his wife, and in 1929, having been unable to collect the interest which was due, Bergman executed a new note which included the amount due on the two notes formerly executed with interest and the old notes were canceled. The interest that was included in the new note was also included by the taxpayer in her return for 1929 and the tax paid thereon accordingly.

Later refund claims were duly filed claiming that the interest items above referred to were improperly included as income in the taxpayer's returns for the respective years. There is no dispute as to the amount of interest so included and the sole issue in the case is whether it was properly taxable as income.

The taxpayer's books were kept on a cash receipts and disbursements basis and her income tax returns, if properly prepared, would be made upon the same basis. No cash was received at the time any of the new notes were taken, nor was anything received or obtained which would

take the place of cash. The question therefore is whether anything was received which amounted to income; in other words, whether there was in fact any payment made when the new notes were taken.

If nothing had been done except to take new notes, it would hardly be contended that there was a payment and that the new notes were evidence of income received. The rule in most jurisdictions, including the federal courts, is that in the absence of agreement or consent to receive it as such, a promissory note of the debtor, although accepted by the creditor, does not in itself constitute payment or amount to a discharge of the debt. 48 C.J. p. 610, § 40. And the Board of Tax Appeals in San Jacinto Life Ins. Co. v. Commissioner, 34 B.T.A. 186, held that a promissory note given in evidence of the liability of the maker for overdue interest upon which nothing was paid did not show that the taxpayer received any interest income. The evidence fails to show that there was any agreement or understanding between the debtor and creditor that the new notes should operate as a payment and extinguish the original indebtedness. It is true that the new note executed by Loftus was given in place of one of three notes held by the taxpayer together with interest in arrears on all three notes, but apparently this was done as a matter of convenience in fixing the amount of the lien upon the new security.

The case of Great Southern Life Ins. Co. v. Commissioner, 36 B.T.A. 828, is cited by plaintiffs, but it is not directly in point. The Board gave as part of its reasons for the decision that the renewal notes were secured by the identical property which secured the old notes and the security was of a value less than the amount of the old notes, also that there was no market for the renewal notes.

The recent case of Claire D. Schlemmer v. United States, 94 F.2d 77, decided January 10, 1938, by the United States Circuit Court of Appeals for the Second Circuit, tends to support the contention of plaintiffs although the facts are not exactly parallel. In that case, it appeared that the plaintiff had received a note for the amount of a debt which was owing to him and that in making up his income tax he returned the amount of the note as income and paid the tax computed thereon. Later he filed a claim for refund alleging in substance that the receipt of the note did not constitute income for that year. The Circuit Court of Appeals held that the note given plaintiff did not pay the debt in the absence of an agreement to that effect, citing among other cases Segrist v. Crabtree, 131 U.S. 287, 9 S.Ct. 687, 33 L.Ed. 125, which approved the doctrine that the note only operated as an extension of the payment of the debt unless it was otherwise expressly agreed by the parties. The Schlemmer Case also holds that the tax return is no evidence of an agreement that the note should be payment. We think the principles laid down in this case apply although it does not appear that any security was taken at the time when the note was given. In the case at bar, the taxpayer actually received nothing in the way of money or property. All that she got was the right, contingent upon payment not being made within the time specified by the note, to foreclose the lien upon certain property and apply the proceeds to the payment of the debt.

The argument made on behalf of the defendant is that for the interest due on the Loftus and Blakely notes additional security was given and thereby the taxpayer acquired new and additional rights which were of value to her. It may be conceded that this additional security was of some advantage to the taxpayer, but there is nothing in the evidence from which we can determine of how much value this advantage was. It is uniformly held that the taking of security for a preexisting debt does not constitute payment or discharge of the debt. 48 C.J. p. 625, § 60. And if this be true, it follows that the taking of additional security would not constitute a payment on the debt. In decisions as to whether the receipt of a note will constitute payment, the courts have sometimes referred to the note itself as additional security for the reason, as we understand, that the obligation is made more definite although the time of payment is extended. The situation is not materially different than it would have been if the taxpayer without receiving any new note had agreed to extend the time for the payment of interest and taken additional security, in which event we think the authorities cited above show there would have been no payment.

Helvering v. Midland Mut. Life Ins. Co., 300 U.S. 216, 57 S.Ct. 423, 426, 81 L.Ed. 612, 108 A.L.R. 436, does not, as we think,

support the contentions of defendant. In that case it appeared that a life insurance company at a foreclosure sale bid the principal of its mortgage loan plus accrued interest and took over the property in satisfaction of the whole debt without any cash being disbursed in the transaction and it was held that the amount of the interest was taxable as income. Obviously, as stated in the opinion, the bid was made for the purpose of avoiding loss of investment in case of redemption by the mortgagor. It is perfectly clear that in this case the original debt was extinguished and this could only be done by a payment in some form. The fact that cash was not used in the transaction did not alter the situation. The case has no similarity to the one now before us. We think it merely shows that the payment need not be in cash where there is an equivalent.

It was also said in the opinion in the Helvering Case that: "Income may be realized upon a change in the nature of legal rights held, though the particular taxpayer has enjoyed no addition to his economic worth." But this is far from laying down a general rule that when there is a change in the legal rights of a taxpayer by which he receives some benefit, income has been received. If this were the rule the taking of additional security would constitute payment. The application of the language quoted above will be made plain by an examination of the cases cited in the opinion. All of these cases are very different from the one now at bar.

In determining the rule which should be applied to the case now before us, we find the authorities hold that the giving of a new note for the old indebtedness will not in itself constitute payment, and the giving of additional security will not constitute payment. Neither of these matters has in itself any of the necessary elements of payment, consequently both of them taken together would not constitute payment.

No additional security was taken for the new Bergman note which included the interest which was reported in the taxpayer's return for 1929. There is no contention made that plaintiffs are not entitled to a refund as claimed on the taxes paid for that year, and we think the plaintiffs are also entitled to recover the amount of the overpayment for 1926 which resulted from reporting as income interest which under our view of the case had not been paid.

There has been no argument or discussion with reference to the amount of the refund to which plaintiffs would be entitled in case it should be found that they are entitled to recover on all or any of the several claims made in the petition, but it would seem that the amount stated in the petition is excessive. If counsel can agree as to the amount which plaintiffs are entitled to recover in accordance with the foregoing opinion, a stipulation may be filed stating it and judgment will be entered accordingly. If not, counsel may submit their respective calculations of the proper sum and the court will determine the amount of judgment to be rendered.