Laura Lasley **HAMIL**, as Executrix of the Last Will and Testament of George H. Mason, Deceased, Plaintiff,

v.

**John L. FAHS,** formerly the Collector of Internal Revenue, for the District of Florida, Defendant.

Civ. No. 2339.

United States District Court, S. D. Florida, Tampa Division.

March 30, 1955.

T. M. Shackleford, Jr., Shackleford, Farrior, Shannon & Stallings, Tampa, Fla., A. Obie Stewart, Tampa, Fla., Crawford & May, Jacksonville, Fla., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Lester L. Gibson, Sp. Assts. to Atty. Gen., James L. Guilmartin, U. S. Atty., Miami, Fla., Frank J. Muscarella, Jr., Asst. U. S. Atty., Tampa, Fla., for defendant.

WHITEHURST, District Judge.

This is an action in which plaintiff, as executrix of the last will and testament of George H. Mason, deceased, seeks to recover an alleged over-payment of estate taxes in the amount of $12,731.61 and interest thereon, alleged to have been erroneously and illegally assessed against and collected from the estate of the decedent.

At a pre-trial conference counsel suggested that the issues involved might be simplified by consideration of undisputed facts supporting defendant's first affirmative defense, to wit:

"That the refund of any tax or the prosecution of this suit is barred by reason of a settlement agreement made and entered into by and between the plaintiff Executrix of the Estate of the decedent and the Commissioner of Internal Revenue."

Whereupon, the Court entered an Order that it was desirable to dispose of this question in advance of the trial and before any further pre-trial conference relative to any other issues in the case, and respective counsel were given time for filing briefs on the question. Briefs were duly filed. Government counsel's statement of facts follows:

"Decedent, George H. Mason, died testate on June 29, 1947, at Tampa, Florida. On April 7, 1948, plaintiff, the duly qualified and acting executrix of decedent's estate, filed an estate tax return with the defendant, John L. Fahs, disclosing a total gross estate of $341,744.57 and net estate tax payable, as corrected, in the amount of $34,859.51, which was paid to the defendant on the same day. On June 22, 1949, a thirty-day letter was sent to plaintiff disclosing a deficiency of $37,011.16 and correct tax liability in the amount of $71,870.67. The deficiency resulted from the following: (1) increase in the valuation of note (reported as Item 6 Schedule C of return) from $78,125 to its face value, $117,187.-50, or a difference of $39,062.50; (2) increase in the value of decedent's interest in a partnership from $101.85 (as reported at Item 1 schedule F of the return) to $45,302.38; (3) inclusion of $27,787.78 in gross estate as transfers in contemplation of death;[1] (4) the disallowance of claimed debts of decedent in the amount of $5,060.42. Disallowance of the debts had been conceded by plaintiff and on June 4, 1949, she paid $8,461.66, the part of the deficiency attributable to the transfer in contemplation of death.

"As a result of protest a conference was held on July 18, 1950, and so far as here important, agreement was reached whereby plaintiff

[1]. This item included $25,597.78 cash and Lots 1, 2, 3 and 4, Block 22, Henderson Beach Subdivision, valued at $2,190.

agreed to an increase in the valuation of the note to $98,656.52; plaintiff agreed to the inclusion of $25,-597.78 in gross estate as a transfer in contemplation of death; and plaintiff agreed to disallowance of the debts of the decedent. In turn, the Commissioner, through defendant, agreed to drop the determination including the children's share of the partnership in decedent's estate and the determination including the lots, valued at $2,190, in decedent's estate. These adjustments resulted in a deficiency of $14,128.

"Whereupon and on July 24, 1950, the plaintiff, through counsel, signed a Form 890, waiver of restrictions against assessment and collection of deficiency in estate tax, wherein the plaintiff agreed not to file or prosecute a claim for refund and, upon request of the Commissioner, to execute a closing agreement."

The so-called agreement referred to above, and upon which defendant's first affirmative defense rests, reads as follows:

"Form 890
"Treasury Department
"Internal Revenue Service
"(Revised November 1949)
  "Waiver of Restrictions Against Assessment and Collection of Deficiency in Estate Tax
"District of Florida
  "Pursuant to the provisions of section 871(d) of the Internal Revenue Code [26 U.S.C.A. § 871(d)] or corresponding provisions of prior internal revenue laws, the undersigned executor or administrator of the estate of George H. Mason waives the restrictions provided in section 871(a) of the Internal Revenue Code, as amended, or corresponding provisions of prior internal revenue laws, and consents to the assessment and collection of a deficiency in estate tax in the sum of $14,128.28, together with interest thereon as provided by law.

"The undersigned agrees: (1) to make payment of the deficiency, together with interest as provided by law; (2) not to file or prosecute any claim for refund for estate tax; and (3) upon request of the Commissioner, to execute at any time a final closing agreement as to the estate tax liability of the estate on the foregoing basis under request of the Commissioner, to execute at any time a final closing agreement as to the estate tax liability of the estate on the foregoing basis under the provisions of section 3760 of the Internal Revenue Code [26 U.S.C.A. § 3760].

"It is understood that evidence of payment of estate, inheritance, legacy or succession taxes to any of the several States, Territories or the District of Columbia (or if the decedent died after June 29, 1939, to any possession of the United States), as required by Section 81.9 of Regulations 105, will be filed with the Bureau of Internal Revenue at Washington, D. C., as promptly as practicable. In the event that such evidence is not filed on or before Nov. 1, 1950, the undersigned executor or administrator waives the restrictions provided in Section 308 (a) of the Revenue Act of 1926, or Section 871(a) of the Internal Revenue Code, and consents to the assessment and collection of a further deficiency in estate tax in the sum of $2,720.68, together with interest thereon at the statutory rate to the 30th day after Nov. 1, 1950 or until the further deficiency is assessed, whichever is earlier.

                "Laura Lasley Mason
    "(Executor or Administrator)
"Date July 24th, 1950
        "By /s/ J. T. G. Crawford
            "Attorney-in-fact
        "Embassy Apartments,
                        Tampa, Florida

"Note.—The execution and filing of this waiver will expedite the set-

tlement of the case and will reduce the accumulation of interest, as the regular interest period terminates 30 days after the filing of the waiver or on the date of assessment, whichever is earlier. It is not, however, a final closing agreement under Section 3760 of the Internal Revenue Code and does not, therefore, preclude the assertion of a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due; nor does it extend the statutory period of limitation for refund. assessment, or collection of the tax."

Although the agreement is not attached as an exhibit to the defense, it is made a part of Government counsel's brief and will be treated as an exhibit in connection therewith.

Government counsel's brief further states:

"On July 25, 1950, one day after signing the above form, plaintiff paid the $5,666.62 balance due ($8,-461.66 plus $5,666.62 equals $14,-128.28) and on August 9, 1950, accrued interest of $922.32 was paid.

"On April 3, 1952, which was within three years from the time the tax was paid, plaintiff filed a timely claim for refund. The claim was rejected by the Internal Revenue Agent in Charge on October 8, 1952, and by letter dated December 12, 1952, the Commissioner of Internal Revenue affirmed the rejection. This action was filed on April 20, 1953.

"The period of limitation for assessment and collection of any deficiency in estate tax against the decedent's estate expired on April 7, 1951, three years after the date on which the estate tax return of the decedent was filed under Section 874(a) of the Internal Revenue Code of 1939 [26 U.S.C.A. § 874(a)]. On April 3, 1952, the date the claim for refund was filed, the period of limitation for assessment of any addi-

tional tax against the plaintiff had expired."

Upon these facts Government counsel urges that plaintiff is estopped to make any claim for over-payment of tax, and relies on the doctrine of equitable estoppel to sustain his position.

■ In the case of Joyce v. Gentsch, 6 Cir., 141 F.2d 891, at page 892, cited by counsel for plaintiff, there was involved a purported agreement similar to the one here. In that case the agreement relied on by the Government was reflected by an adaptation of a waiver of restriction on assessment and collection of deficiency in tax, on printed form 870 of the Treasury Department, which form varied in some immaterial respects from the one involved here and set out above. The typewritten addition to the form in that case was as follows:

" 'This Waiver of Restrictions is subject to acceptance by the Deputy Commissioner on the basis of the adjusted liability as hereinabove proposed and if not thus accepted, will have no force or effect.

" 'If this proposal is accepted the taxpayer agrees (1) to make payment of the above deficiency, together with interest as provided by law, promptly upon receipt of notice and demand from the collector of internal revenue; (2) not to file or prosecute any claim for refund of income taxes for the year 1934 except claims in connection with stock of the Glidden Company received as a bonus and reported as compensation, and (3) upon request of the Commissioner will execute at any time a final closing agreement as to the tax liability, on the foregoing basis, for the said year 1934 under the provisions of section 606 of the Revenue Act of 1928.' "

and in the printed footnote the waiver form contained the following:

" 'The execution and filing of this waiver at the address shown in the accompanying letter will expedite the adjustment of your income tax

liability as indicated above. It is not, however, a final closing agreement under Section 606 of the Revenue Act of 1928 and does not, therefore, preclude the assertion of a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due, nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax.'"

It was contended in that case, as here, that the agreement worked an estoppel principally because at the time of suit the statute of limitation against further assessment had run, but the Court there rejected this contention, citing Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, where it was held "A claim for recovery of money (taxes wrongfully exacted by the Government) so held may not only be the subject of a suit in the Court of Claims, but may be used by way of recoupment and credit in an action by the United States arising out of the same transaction, and this even though an independent suit against the Government to enforce the claim would be barred by the statute of limitations.

"Recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely."

The equitable defense there was available to the taxpayer while the same doctrine was invoked on behalf of the Government in the case of Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, where it was held a statutory action for a refund of taxes erroneously collected is in the nature of a common law action for money had and received and, like it, is governed by equitable principles. Where the income from a trust, belonging to the sole beneficiary, was erroneously taxed to and collected from the trustees, when it should have been taxed to the beneficiary, in an action by the trustees for a refund, the Collector may set up in defense that the Government has the right to retain the money, by way of equitable recoupment, although collection from the beneficiary is barred by the statute of limitations.

The opinion in the Joyce case then suggests the propriety in a case of this kind, of a claim by way of the defense of recoupment on the part of the Government to recover such taxes as it claims is owed by the taxpayer, notwithstanding the statute of limitations.

If in the case at bar there is available to the defendant the equitable defense of recoupment, how could it be said that the defendant's position is so changed by the unilateral promise of the plaintiff "not to sue" as to deprive the defendant of any right which he had. One of the well-known elements of equitable estoppel would, therefore, be absent. The defendant has not given up or lost any right to claim further payment in this case of such amount of tax due by plaintiff which has not been paid.

The case of Mahoning Inv. Co. v. United States, (Rochester & Pittsburgh Coal & Iron Co. v. United States), 3 F.Supp. 622, 78 Ct.Cl. 231, cited by Government counsel, involved transactions between the taxpayer and the Government substantially different from those here. In that case the doctrine of estoppel was applied to prevent recovery by a taxpayer of an assessment of tax not in controversy as to amount but the collection of which was attempted in a manner not sanctioned by the law and in which it, the taxpayer, had acquiesced, leading the tax officials to understand that the erroneous method so used was entirely acceptable to it, the taxpayer, and agreed to by it. The ultimate question was whether the Coal Company was estopped, under the peculiar circumstances of the case, from recovering the tax which it had paid.

It was said by the Court in Joyce v. Gentsch, supra, "The Waiver, on Treasury Department Form 870, with the

typewritten interlineations, was not binding upon the Government and, therefore, did not bind the taxpayer. The waiver agreement was not signed, approved, or accepted by anyone authorized by the Acts of Congress to bind the Government to a tax compromise, or to a closing agreement. The statutes are specific. 'The Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, may compromise any civil or criminal case arising under the internal-revenue laws instead of commencing suit thereon; * * *.' (Citing statutes.)" It was pointed out by the Court that the waiver agreement was not claimed to be a compromise agreement or a closing agreement, executed, approved, or entered into with the advice and consent of the Secretary, or an Undersecretary, or any Assistant Secretary, of the Treasury, but that, indeed, the instrument itself declared that it was not a final closing agreement and expressly provided that further tax deficiency could be assessed should it be subsequently determined that additional tax was due. Thus, the instrument in terms did not even purport to bind the Government.

Certainly the same can be said of the waiver agreement involved in this case.

It was pointed out in that case that "the Government was not bound by the waiver agreement; *not only because of a lack of authority from the Secretary of the Treasury for its execution, but also because by its very terms, an intention not to bind the Government to a final settlement was manifest.** The right to assess a further deficiency was expressly reserved. The waiver agreement was, therefore, entirely lacking in essential mutuality." The same is equally applicable to the agreement in the case at bar.

Counsel for plaintiff urges that the case of Botany Worsted Mills v. United States, 278 U.S. 282, 288, 289, 49 S.Ct. 129, 131, 73 L.Ed. 379, is decisive of the question presented here, and numerous cases are cited following the doctrine of that case. On the other hand, Government counsel countered with the proposition that the case at bar is an exception within the doctrine of that case inasmuch as, under the estoppel theory, the case at bar should not be tested as plaintiff's counsel contends. But in the case at bar it will be observed that by the so-called agreement only the taxpayer was bound, and while he agreed to execute at a future time a final closing agreement under the provisions of Section 3760 of the Internal Revenue Code, the Commissioner did not agree to enter into such closing agreement but specifically reserved the right to make additional deficiency assessments. It is not the same kind of agreement which was involved in Guggenheim v. United States, 77 F.Supp. 186, 189, 111 Ct.Cl. 165, cited by Government counsel, where the agreement was formally accepted by the Commissioner, and which agreement had stricken from it the significant language, " 'does not, therefore, preclude the assertion of a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due' ".

It is therefore concluded that the question presented by counsel involving the defendant's first affirmative defense based upon the admitted agreement falls within the doctrine of Botany Worsted Mills v. United States, supra. And since there is absent from the case at bar any circumstances of equitable estoppel, and the exhibit relied upon by defendant as an agreement is not such as is required under Section 3760 of the Internal Revenue Code, the first affirmative defense cannot be supported and the Order to be entered at final pre-trial conference herein will eliminate it. Defendant may move, within (30) days, to amend his Answer, if so advised, by asserting against plaintiff counterclaim for such amount, if any, as defendant claims plaintiff owes by way of unpaid additional tax.

* (Italics supplied.)